IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| DONALD R. LITTLEFIELD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:19-cv-00490 |
| HERBERT H. SLATERY, III, et al., | ) | JUDGE RICHARDSON |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1), filed by Plaintiff Donald R. Littlefield, formerly (including at the time he filed the complaint) an inmate of the Sumner County Jail in Gallatin, Tennessee, and currently confined in the custody of the Davidson County Sheriff's Office. (*See* Doc. Nos. 6, 7.) Plaintiff has also filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 5.)

This matter is now before the Court for a determination of Plaintiff's pauper status and an initial review of the complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## APPLICATION TO PROCEED AS A PAUPER

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 5) will be granted by separate Order.

**INITIAL REVIEW OF THE COMPLAINT**

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a

plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

## II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## III. ALLEGATIONS AND CLAIMS

Plaintiff sues the Tennessee Attorney General, Herbert H. Slatery, III, as well as the Director of the Tennessee Bureau of Investigation, Mark Gwyn,[1] each in their official capacity, claiming that his constitutional rights have been violated by their enforcement of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 (hereinafter, "the Act"), Tenn. Code Ann. § 40-39-201 *et seq.* (Doc. No. 1 at 5.) Following his 1992 conviction of aggravated rape, Plaintiff was sentenced to a term of imprisonment in the custody of the Tennessee Department of Correction (TDOC). (*Id.*) No sex offender registration requirement existed at the time of Plaintiff's conviction. (*Id.*) However, upon his release from TDOC custody in 2002, Plaintiff was required to register as a violent sexual offender. He claims that he has been unconstitutionally subjected to retroactive application of the Act's requirements,

---

[1] Mark Gwyn actually had stepped down as Director of the Tennessee Bureau of Investigation (TBI) long before Plaintiff even filed the complaint. But Plaintiff's failure to correctly name the current TBI official sued in his official capacity is immaterial for purposes of the Court's initial screening of the complaint.

such that now, under the current version of the Act, he is required to register in person with state authorities every 90 days for the rest of his life or be subjected to punishment by incarceration which "cannot be suspended, probated, or diverted." (*Id.* at 5–6.)

Plaintiff alleges that the requirements of the Act have resulted in "punishment at the hands of his fellow citizens - not the state - by the loss of community status, several jobs, and multiple loss[es] of housing." (*Id.* at 10.) He claims that the current version of the Act "as amended since 2004"[2] is "punitive in substance and effect," "creates retroactive punishment," and is thus unconstitutional. (*Id.* at 7–12.) Plaintiff alleges that his loss of status, jobs, and housing due to public disclosure of his sex-offender status is so punitive "that it literally has forced the Plaintiff to go underground and not comply" with the Act's requirements. (*Id.* at 10.) He claims that the Act's enforcement violates his First Amendment right to free speech, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment right to due process. (*Id.* at 7.)

As relief, Plaintiff asks the Court to declare that the Act imposes retroactive punishment and award permanent injunctive relief prohibiting the Act's enforcement, "including the dissemination of information regarding registration" under the Act. (*Id.* at 13.)

IV. ANALYSIS

Plaintiff claims that the Act, as applied to him,[3] violates his First, Eighth, and Fourteenth Amendment rights. However, these constitutional claims are based on Plaintiff's argument for the

---

[2] In 2004, the Tennessee legislature repealed its original sex offender registration statute (the Sex Offender Registration and Monitoring Act of 1994) and replaced it with the Act, which has since been amended on multiple occasions. *See Doe v. Haslam*, No. 3:16-cv-02862, 2017 WL 5187117, at *2 (M.D. Tenn. Nov. 9, 2017).

[3] While Plaintiff also purports to mount a facial challenge to the Act (*see* Doc. No.1 at 9 ("[The Act] as amended since 2004 is unconstitutional on its face and as applied to Plaintiff as it creates retroactive punishment.")), the gravamen of the complaint is its claim that the Act is invalid in the fact-specific context

application here of case law that considered other states' sex offender registration laws as applied to the particular plaintiffs in those cases (Doc. No. 1 at 8–9),[4] rather than factual allegations that could give rise to a plausible claim of First, Eighth, and Fourteenth Amendment violations in this case. Liberally construing the complaint as raising a challenge under the Ex Post Facto Clause, the only requirement of the Act alleged as the source of any violation is the requirement that Plaintiff register in person with state authorities every 90 days for the rest of his life. (*Id.* at 5.) His only allegation of resulting harm is the nonspecific report of "the loss of community status, several jobs, and multiple loss[es] of housing" due to the judgment of his fellow citizens, and the only relief he seeks is an injunction "prohibiting enforcement of [the Act] including the dissemination of information regarding registration." (Doc. No. 1 at 10, 13.)

Even broadly construing the complaint's sparse allegations, the Court cannot find that Plaintiff has stated any plausible claims of First, Eighth, or Fourteenth Amendment violations attributable to the Act, rather than to the fact of his conviction of a violent sex offense. *Cf. Burns v. Helper*, No. 3:18-cv-01231, 2019 WL 5987707, at *7 (M.D. Tenn. Oct. 24, 2019) (recommending dismissal where complaint's allegations did not support plausible Sixth, Eighth, and Fourteenth Amendment claims resulting from "the Act itself," and where allegation of harm

---

of its retroactive application to Plaintiff, a "violent" sexual offender. For this reason, and because facial challenges are disfavored particularly when an as-applied challenge is also made, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008), the Court does not view the complaint as stating a colorable claim that the Act should be stricken *in toto* as facially unconstitutional. *See Warshak v. United States*, 532 F.3d 521, 529 (6th Cir. 2008) (noting that the point of a facial attack is "to leave nothing standing," since success on a facial challenge to a statute requires "that no set of circumstances exists under which the Act would be valid") (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

[4] Plaintiff relies on *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) (holding that retroactive application of Michigan's sex offender registration statute punished plaintiffs in violation of Ex Post Facto Clause), *Millard v. Rankin*, 265 F. Supp. 3d 1211 (D. Colo. 2017) (holding that Colorado statute as applied to plaintiffs violated their Eighth and Fourteenth Amendment rights), and *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) (holding North Carolina statute that barred registered sex offenders from accessing commercial social networking sites invalid under First Amendment).

"turns on the fact of his conviction and not on the Sex Offender Registration Act"), *report and recommendation adopted*, No. 3:18-cv-01231, 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019) (Campbell, J.); *accord Smith v. Doe*, 538 U.S. 84, 101 (2003) ("Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record."). The allegation that Plaintiff must register with law enforcement every 90 days or incur liability, standing alone, plainly does not support a colorable claim that his rights related to free speech, cruel and unusual punishment, or due process have been violated. *See Burns*, 2019 WL 5987707, at *7 (rejecting Eighth and Fourteenth Amendment claims where plaintiff failed to plead any facts that would support the inference that the Act's requirements or restrictions were cruel and unusual, denied a procedural safeguard, or burdened a fundamental right).

Furthermore, "[i]t is well-settled that the state may adopt some retroactive registration and reporting requirements for sexual offenders without categorically violating the Ex Post Facto clause." *Doe v. Haslam*, No. 3:16-cv-02862, 2017 WL 5187117, at *19 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, C.J.) (citing *Smith*, 538 U.S. at 92). True, the Act's registration requirement may be onerous and the public dissemination of Plaintiff's status as a violent sex offender painful. But the bare allegation that he is subject to these things despite no such law being on the books in 1992 when he was convicted, and that he will be liable if he fails to register, combined with the conclusory assertion that this amounts to "retroactive punishment" (Doc. No. 1 at 9, 12, 13), is not sufficient to state a plausible Ex Post Facto claim. *See United States v. Coleman*, 675 F.3d 615, 619 (6th Cir. 2012) (rejecting argument that sentence for failing to comply with registration requirement of federal statute "actually punishes the prior sex offense and not the failure to
6

register," and that application of statute "to individuals who committed the underlying sex offense prior to its effective date [therefore] retroactively increases the punishment for the subject offense after its commission") (citing *United States v. Felts*, 674 F.3d 599, 605–06 (6th Cir. 2012) (relying on "unanimous consensus among the circuits" that federal statute providing for conviction of a sex offender who fails to register "does not increase the punishment for the past conviction" of a sex offense, and thus does not violate Ex Post Facto Clause)).

In sum, Plaintiff has failed to plead sufficient facts to support the claimed constitutional violations resulting from the Act, as applied to him. His complaint will therefore be dismissed.

## **CONCLUSION**

For these reasons, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted, and that this case must therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

An appropriate Order will enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE